**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **BENITA WASHINGTON** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CBD-15-1553** |
| | ) | |
| **CAROLYN W. COLVIN** | ) | |
| | ) | |
| **Acting Commissioner,** | ) | |
| **Social Security Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Benita Washington ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying Plaintiff's application for Supplemental Security Income ("SSI") Benefits. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 12) and Defendant's Motion for Summary Judgment ("Defendant's Motion") (ECF No. 14). The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby **GRANTS** Plaintiff's Motion, **DENIES** Defendant's Motion, and **REMANDS** this matter to the Commissioner for further proceedings in accordance with this opinion.

## I.       Procedural Background

Plaintiff applied for SSI benefits on June 28, 2011, alleging disability beginning on January 1, 2010. R. 16. The claim was denied on September 1, 2011. *Id.* Plaintiff's request for reconsideration of the denial of benefits was denied on October 1, 2012. *Id.* On November 9,

2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  *Id.*  On

October 24, 2013, Plaintiff had a hearing before an ALJ, and on January 30, 2014, in a written

decision, the ALJ determined that Plaintiff was not disabled under section 1614(a)(3)(A) of the

Social Security Act.  R. 16-29.

On February 27, 2014, Plaintiff requested a review of the ALJ's decision of January 30,

2014.  R. 12.  The Appeals Council denied Plaintiff' request for review.  R. 1-3.

## II.      Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ

"with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2006).  The Court

must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the

correct law.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any

fact, if supported by substantial evidence, shall be conclusive."); s*ee also Russell v. Comm'r of*

*Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011).  Substantial evidence is more than a mere

scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated*

*Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted); *see also*

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640,

642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla

of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a

refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court

"determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his

decision is supported by substantial evidence."  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.

1990).  The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts.  *Id.*  If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court.  *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Court shall find a person legally disabled if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a) (2012).  The Code of Federal Regulations outlines a five-step sequential process that the Defendant must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  If he is doing such activity, he is not disabled.  If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement."  20 C.F.R. § 416.920(a)(4)(ii).  If he does not have such impairment or combination of impairments, he is not disabled.  If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement."  20 C.F.R. § 416.920(a)(4)(iii).  If he does have such impairment, he is disabled.  If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" to perform "past relevant work."  20 C.F.R. § 416.920(a)(4)(iv).  If he can perform such work, he is not disabled.  If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his residual functional capacity, age, education, and work experience.  20 C.F.R. § 416.920(a)(4)(v).  If he can perform other work, he is not disabled.  If he cannot, he is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and

Defendant has the burden to prove that Plaintiff is not disabled at step five. *Pass v. Chater*, 65

F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

## III.    Analysis

The ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process.  At

step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since

June 28, 2011, the application date.  R. 18.

At step two, the ALJ determined that Plaintiff has the following severe impairments:

clogged digestive disorder, respiratory disorder, depressive disorder, and knee disorder.  *Id*.  The

ALJ found that each of these impairments "has more than a minimal effect on the ability to [do]

work-related activities."  *Id*.

At step three, the ALJ determined that Plaintiff "does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and

416.926)."  R. 20.

Before considering the fourth step, the ALJ had to determine Plaintiff's residual

functional capacity ("RFC").  R. 21.  The ALJ determined that Plaintiff "has the [RFC] to

perform light work as defined in 20 C.F.R. 416.967(b), with sit/stand option, at will."  *Id*.  The

ALJ determined that Plaintiff "could be exposed to dust, odors, fumes, and pulmonary irritants

on a frequent basis."  *Id*.  The ALJ further determined that Plaintiff "has the ability to

understand, remember and carry out instructions, which are simple and routine tasks."  *Id*.  The

ALJ also concluded that that Plaintiff occasionally "has the ability to interact with supervisors,

co-workers and the general public," and that Plaintiff occasionally "has the ability to make

simple decisions." *Id*.  Finally, the ALJ determined that Plaintiff "has the ability to use judgment

in making work-related decision" if they are simple.  *Id*.  At step four, the ALJ determined that

Plaintiff is unable to perform any past relevant work.  R. 28.

At step five, the ALJ determined that "considering [Plaintiff's] age, education, work

experience, and [RFC], there are jobs that exist in significant numbers in the national economy

that [Plaintiff] can perform."  *Id*.  Therefore, the ALJ concluded that Plaintiff "has not been

under a disability, as defined in the Social Security Act, since June 28, 2011, the date the

application was filed."  R. 29.

On appeal, Plaintiff argues that the Court should enter judgment as a matter of law in her

favor or in the alternative, remand this matter to the Social Security Administration for a new

administrative hearing, because the ALJ erroneously assessed her RFC.  Pl.'s Mot. 3.  For the

reasons set forth below, the Court remands this matter to the Commissioner for further

proceedings in accordance with this opinion.

### A.  The ALJ accounted for limitations of concentration, persistence, or pace in the hypothetical question posed to the vocational expert.

Plaintiff first argues that the ALJ failed to properly assess her limitations as required

under the Social Security Ruling 96-8p, which requires a "function-by-function assessment of a

claimant's ability to perform the physical and mental demands of work."  Pl.'s Mot. 3-5.

Specifically, Plaintiff asserts that although the ALJ "determined that Plaintiff had moderate

difficulties with regard to concentration, persistence, or pace, he failed to include any limitation

on concentration, persistence, or pace in his residual functional capacity assessment."  *Id*. at 5.

According to Plaintiff, under *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), "a limitation to

simple, routine tasks, without explanation, is inadequate to address limitations in concentration,

persistence, and pace."  *Id*. at 6.  Plaintiff further points out that the ALJ's lack of explanation as

to Plaintiff's activities of daily living, social functioning, and concentration, persistence, or pace is inadequate under 20 C.F.R. § 404.1520(a).  *Id.* n. 1

In response, Defendant argues that the ALJ adequately accounted for moderate limitations in concentration, persistence, or pace under *Mascio*.  Def.'s Mot. 19.  Specifically, Defendant contends that the ALJ included additional limitations in the hypothetical questions to the vocational expert which excluded work involving significant stress.  *Id.* at 18-19.  Defendant then argues that such limitations adequately accounted for Plaintiff's moderate difficulties in maintaining concentration, persistence and pace and in support of this position cites *Henig v. Colvin*, No. TMD-13-1623, 2015 WL 5081619, at *12 (D. Md. Aug. 26, 2015).  *Id.*

Defendant additionally argues that Plaintiff's reliance on *Mascio* is without merit because the ALJ explained why he concluded that Plaintiff had moderate difficulties in concentration, persistence, or pace, and these difficulties were fully accommodated in the RFC assessment and hypothetical question.  Def.'s Mot. 19-20.  Defendant highlights that the ALJ cited to Dr. Bangura's consultative examination which yielded a Global Assessment of Functioning ("GAF") score of "60" indicating some mild symptoms.  *Id.* at 20.  According to Defendant, the ALJ discussed the treatment notes as well which indicated that Plaintiff had a normal mental status exam.  *Id.*  Defendant uses these findings by the ALJ to indicate that he accounted for these difficulties when coming to a determination about Plaintiff's RFC.

RFC is the most Plaintiff can do despite her limitations.  *See* 20 C.F.R. § 416.945(a)(1).  In making this assessment, the ALJ must consider Plaintiff's ability to meet the physical, mental, sensory, and other requirements of work.  *See* 20 C.F.R. § 416.945(a)(4).  The ALJ must also present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities,

observations),” and “must . . . explain how any material inconsistencies or ambiguities in the

evidence in the case record were considered and resolved.”  SSR 96–8p, 1996 WL 374184 at *7

(July 2, 1996); *Barton v. Astrue*, 495 F. Supp. 2d 504, 510 (D. Md. 2007).

When evaluating a claimant’s mental RFC, the ALJ must rate the degree of functional

limitation with respect to four criteria: activities of daily living; social functioning;

concentration, persistence, or pace; and episodes of decompensation.  *See* 20 C.F.R. §

416.920a(c)(3) (2011).  Concentration, persistence, or pace refers to “the ability to sustain

focused attention and concentration sufficiently long to permit the timely and appropriate

completion of tasks commonly found in work settings.”  20 C.F.R. pt. 404, subpt. P, app. 1,

§ 12.00(C)(3).

Plaintiff correctly notes that “[t]he RFC assessment is a function-by-function assessment

based upon all of the relevant evidence of an individual’s ability to do work-related activities.”

*See* SSR 96–8p, 1996 WL 374184, at *3 (July 2, 1996).  Under Fourth Circuit law, there is no

per se rule requiring remand when an ALJ does not perform an explicit function-by-function

analysis.  *See Mascio*, 780 F.3d at 636 (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir.

2013)).  In *Mascio*, the court held that “a per se rule is inappropriate given that remand would

prove futile in cases where the ALJ does not discuss functions that are ‘irrelevant or

uncontested.’”  *Id.* (quoting *Cichocki*, 729 F.3d at 177).  However, the court added that

“[r]emand may be appropriate . . . where an ALJ fails to assess a claimant’s capacity to perform

relevant functions, despite contradictory evidence in the record, or where other inadequacies in

the ALJ’s analysis frustrate meaningful review.”  *Id.*

The ALJ in this case found that “[w]ith regard to concentration, persistence or pace, the

[Plaintiff] has moderate difficulties.”  R. 21.  The ALJ then placed several limitations on

Plaintiff's RFC as a result of his assessment that Plaintiff had a severe mental impairment.  The ALJ found that Plaintiff has the ability to: understand, remember and carry out instructions, which are simple and routine tasks; interact with supervisors, co-workers and the general public, occasionally; make simple decisions, occasionally; and use judgment in making work-related decisions, which are simple work-related decisions.  *Id.*  One of Plaintiff's arguments is that the ALJ failed to provide any explanation to support a limitation to simple, routine tasks in the hypothetical question to the vocational expert.  Pl.'s Mot. 5-6.  However, Plaintiff's argument is unpersuasive because the ALJ included a restriction on a worker who does not have to satisfy production pace in his hypothetical question to the vocational expert.  An ALJ may justify his decision to limit a claimant to simple, routine tasks by excluding the claimant from production-type line work.  *Henig*, 2015 WL 5081619, at *12.  Therefore, the ALJ's hypothetical question properly accounted for Plaintiff's moderate difficulties in concentration, persistence, or pace.

The ALJ used the following language in the hypothetical question to the vocational expert, "[a]ssume that a hypothetical person who has the same . . . ability [as the claimant] to perform work that does not require satisfaction of production pace; the ability to work – perform work at low stress by avoiding production pace standards . . ."  R. 103-04.  The "production pace" language indicates that the ALJ considered Plaintiff's limitations in concentration, persistence, or pace.  *See Henig*, 2015 WL 5081619, at *12 (holding that excluding production-type line work in the hypothetical question given to the vocational expert accounts for moderate difficulties in maintaining concentration, persistence, or pace) (citations omitted).

This case differs from *Mascio* in terms of the hypothetical question that was asked to the vocational expert.  In *Mascio*, the plaintiff appealed the Social Security Administration's denial of her application for SSI benefits.  *See Mascio*, 780 F.3d at 633.  The issue was whether the ALJ

committed error by failing to perform a function-by-function analysis, when he ignored without explanation the plaintiff's moderate limitation in her ability to maintain her concentration, persistence, or pace. *Id*. The ALJ in that case asked a hypothetical question to the vocational expert that did not include any information regarding the plaintiff's mental limitations. *Id*. at 637. The hypothetical question only limited the plaintiff to light work without discussing any mental limitations at all. *Id*. The court held that the ALJ could not account for the plaintiff's limitations in concentration, persistence, or pace by simply limiting the plaintiff to "light work." *Id*. at 638. In this case, the ALJ did include a discussion of Plaintiff's mental limitations within the hypothetical question when he used the language: "the ability to perform work that does not require satisfaction of production pace; the ability to work – perform work at low stress by avoiding production standards." R. 103-04. Under *Henig*, this language sufficiently accounts for moderate difficulties in maintaining concentration, persistence, or pace. *See Henig*, 2015 WL 5081619, at *12 (citations omitted).

**B. The ALJ committed error when he did not include the limitation on production pace work in the RFC assessment.**

In this case, the ALJ failed to incorporate the limitation on production pace work in his written RFC assessment. This qualifies as error because *Henig* requires an ALJ to include the exclusion of production-type line work in both the hypothetical question to the vocational expert and the written RFC assessment in order to account for moderate difficulties in maintaining concentration, persistence, or pace. *Henig*, 2015 WL 5081619, at *12 ("The ALJ in this case found that Plaintiff was limited to simple, routine, and unskilled work because of his moderate limitations in concentration, persistence, or pace, but the ALJ also included in his RFC assessment and hypothetical questions to the VE a corresponding limitation that excluded Plaintiff from work involving significant stress, such as production-line type work.") (citations

omitted).  Although the ALJ cited to several pieces of evidence that support the conclusion that Plaintiff may have had moderate difficulties in maintaining concentration, persistence, or pace, he did not explain in his written RFC assessment the connection between finding that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace and limiting Plaintiff to simple and routine tasks.  In the RFC assessment here, the ALJ compared Plaintiff's alleged disabling mental capacities with the opinions of Dr. J. Richard Lilly, Dr. Ajit Kurup, and Dr. Memunatu Bangura and found that a moderate limitation on concentration, persistence, and pace was appropriate.  R. 23-24.  Specifically, the ALJ considered in the RFC assessment, the medical records provided by Dr. Lilly indicating that Plaintiff "had only occasional physical and mental limitations due to her . . . depressive disorder . . . which would not preclude [Plaintiff's] abilities to engage in work activities."  R. 22.  Furthermore, the ALJ considered the following specific findings in Dr. Lilly's report: Plaintiff "was oriented to person, place and time;" she "had no [decrease] in concentration;" she "had a normal mood;" "her affect was appropriate;" she "was able to perform activities of daily living in a normal fashion;" and she "had a normal mental examination," and was not in distress.  R. 23.

The ALJ also considered the reports of Dr. Ajit Kurup and Dr. Memunatu Bangura.  R. 23-24.  Both doctors concluded that Plaintiff's mental limitations would not preclude Plaintiff's abilities to engage in work activities.  *Id.*  They also concluded that Plaintiff had a normal examination with few abnormalities.  *Id.*  Dr. Bangura further noted that Plaintiff had "no acute distress" and "moderate mental limitations" that would not impede her ability to engage in work-related activities.  R. 24.  The ALJ gave these opinions "great weight" as he determined Plaintiff's limitations in light of her moderate difficulties in concentration, persistence, or pace.  In addition, Dr. Kurup opined that Plaintiff "was able to sit for prolonged periods of time," and

Dr. Bangura indicated that Plaintiff had a GAF score of 60 which translates to moderate mental limitations.  R. 24.

Defendant correctly notes that the ALJ properly accounted for Plaintiff's difficulties with concentration, persistence, or pace in his hypothetical question to the vocational expert.  Def.'s Mot. 18.  However, Defendant concedes that the ALJ left the "production pace" language out of his written RFC assessment.  Def.'s Mot. 19.  Commissioner attributes this error to "scrivener's error."  *Id*.  This argument is unpersuasive because "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, *the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary*."  *Talmo v. Comm'r Soc. Sec.*, No. ELH-14-2214, 2015 WL 2395102, at *3 (D. Md. May 19, 2015) (emphasis added).  The ALJ in this case did not include a corresponding limitation in the RFC assessment outside of limiting Plaintiff to "simple and routine tasks" which is an insufficient limitation according to *Mascio*. *See Mascio*, 780 F.3d at 638 (". . . [T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.").  It is unclear to the Court whether the ALJ intentionally left the "production pace" language out of the RFC assessment or whether it was, as Defendant suggests, "scrivener's error."  Therefore, this case must be remanded for the ALJ to account for Plaintiff's limitation on production pace work in the RFC assessment.

### C.  The ALJ committed harmless error when he failed to explain why he did not accept Dr. Gomez's and Dr. Kurup's conclusions regarding Plaintiff's limitations.

Plaintiff argues that the ALJ failed to properly evaluate pertinent evidence.  Pl.'s Mot. 6. Specifically, Plaintiff explains that the ALJ accorded significant weight to the findings of State Agency physician, Dr. Rafael Gomez, who found that Plaintiff could occasionally climb ramps

and stairs, ladders, ropes, and scaffolds, and stoop, kneel, crouch, and crawl. *Id*. Dr. Gomez also determined that Plaintiff needed to avoid concentrated exposure to extreme cold and heat, and needed to avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. *Id*. However, Plaintiff contends that the ALJ failed to include any limitation upon Plaintiff's abilities to climb ramps and stairs, ladders, ropes, and scaffolds, stoop, kneel, crouch, and crawl or be exposed to extreme heat or cold. *Id*. at 7. Additionally, Plaintiff argues that instead of including a limitation that she needed to avoid even moderate exposure to pulmonary irritants as found by Dr. Gomez, the ALJ found that Plaintiff could frequently be exposed to pulmonary irritants. *Id*.

Plaintiff also notes that the ALJ accorded significant weight to the opinion of Dr. Ajit Kurup, the consultative examiner who determined that Plaintiff was capable of standing for 30-45 minutes with difficulty, was capable of walking for 30 minutes with difficulty, and could not stoop or crawl. *Id*. However, Plaintiff contends, none of these limitations identified by Dr. Kurup were included in the residual functional capacity assessment or the hypothetical question to the vocational expert. *Id*.

In response, Defendant argues that an ALJ "may give 'significant weight' to an opinion without adopting every detail of that opinion" and cites to *Crudup v. Comm'r, Soc. Sec. Admin.*, SAG-13-860, 2013 WL 5938342, at *2 (D. Md. Nov. 4, 2013). Def.'s Mot. 14. Further, Defendant highlights that the ALJ "discussed the treatment notes underlying the postural and environmental limitations assessed by Dr. Gomez." *Id*. Additionally, Defendant argues that the ALJ "fully considered the details of Dr. Kurup's examination findings and assessed a sit/stand option that accommodates the limitations in Dr. Kurup's opinion, and is consistent with the assignment of weight." *Id*.

Defendant also contends that any error in the ALJ's failure to specifically reject the limitations highlighted by Dr. Gomez and Dr. Kurup is harmless and does not require remand, and cites to *Garner v. Astrue*, 436 F. App'x 224, 226 (4th Cir. 2001) and *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). *Id*. at 15. Defendant argues that the "addition of postural limitations and more severe environmental limitations would have little to no effect on the occupational base for light work" and cites to SSR 83-14, 1983 WL 31254, at *5. *Id*. at 16. In this regard, Commissioner highlights that the ALJ found Plaintiff capable of performing jobs, such as general office worker, inspector, and packer, which do not require any climbing, kneeling, crouching, or crawling, and only occasional stooping, and no exposure to any environmental irritants. *Id*.

The ALJ committed error when he failed to explain whether he was affirmatively rejecting the limitations found in the opinions of Dr. Gomez and Dr. Kurup. An ALJ has a duty to affirmatively reject evidence in the record that contradicts her conclusion. *See v. Washington Metro. Transit Auth.*, 36 F.3d 375, 384 (4th Cir. 1994) (citations omitted) (". . . when faced with evidence in the record contradicting his conclusion, an ALJ must affirmatively reject that contradictory evidence and explain his rationale for so doing."). In this case, Dr. Gomez found that Plaintiff could occasionally climb ramps and stairs, ladders, ropes, and scaffolds, and stoop, kneel, crouch, and crawl. R. 136. Dr. Gomez also determined that Plaintiff needed to avoid concentrated exposure to extreme cold and extreme heat, and needed to avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc. R. 137. In the RFC assessment, the ALJ did not account for any of these limitations and actually found that Plaintiff could be frequently exposed to dust, odors, fumes, and pulmonary irritants which directly contradicts Dr. Gomez's findings. R. 21. The ALJ had a duty to explain whether he was affirmatively rejecting

the opinions of Dr. Gomez because they contradict his final conclusions regarding Plaintiff's

RFC assessment and he did not fulfill that duty in this case.

This finding does not conclude the Court's analysis because the Court must still

determine whether the ALJ's error was harmful.  *See Shinseki v. Sanders*, 556 U.S. 396, 407

(2009).  This Court agrees with Defendant's argument that even if the ALJ adopted the

limitations recommended by Dr. Gomez, this would not bar Plaintiff from performing the jobs

the ALJ identified at step five of the sequential evaluation process.  Def.'s Mot. 16.  The

vocational expert testified that Plaintiff could do the following jobs: general office helper,

inspector, and packer.  R. 104-05.  According to the Dictionary of Occupational Titles, the job of

"office helper" does not require climbing, kneeling, crouching, or crawling; it only requires

occasional stooping; it does not require exposure to extreme cold or extreme heat; and it has no

environmental conditions.  *See* Dictionary of Occupational Titles (DICOT) 239.567-010

(G.P.O.), 1991 WL 672232 (1991).  The job of "paint-spray inspector"[1] does not require

climbing, kneeling, crouching, or crawling; it only requires occasional stooping; it does not

require exposure to extreme cold or extreme heat; and it has no environmental conditions.  *See*

DICOT 741.687-010 (G.P.O.), 1991 WL 680249 (1991).  The job of "packer" does not require

climbing, kneeling, crouching, crawling, or stooping; it does not require exposure to extreme

cold or extreme heat; and it has no environmental conditions.  *See* DICOT 222.687-022 (G.P.O.),

1991 WL 672133 (1991).  Therefore, Defendant's argument has merit because even if the ALJ

adopted the RFC limitations that Dr. Gomez recommended, Plaintiff would still have the

requisite RFC to perform the jobs of general office helper, inspector, and packer.  Thus,

Defendant would have met her burden at step five of the sequential evaluation process.

---

[1] The vocational expert referred to this position as "inspector" in the hearing before the ALJ.  He cited to the DICOT
number 741.687-010 which corresponds to the occupation of "paint-spray inspector."

Plaintiff's argument that the ALJ erroneously excluded Dr. Kurup's limitations in the hypothetical question to the vocational expert as well as in the RFC assessment does not have merit. A vocational expert's purpose is to "assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Furthermore, "[i]n order for a vocational expert's opinion to be relevant or helpful . . . it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* at 50-51 (quoting *Stephens v. Sec'y of Health, Education and Welfare*, 603 F.2d 36 (8th Cir. 1979)). In this case, the ALJ acknowledges the limitations and impairments that Dr. Kurup identified. Specifically, Dr. Kurup opined that Plaintiff was only capable of standing for 30 to 45 minutes with difficulty, was capable of walking for 30 minutes with difficulty, and could not stoop or crawl. R. 328. The ALJ accounted for these limitations by including a "sit/stand option" in the hypothetical question to the vocational expert. R. 103-04. The ALJ also used the "sit/stand" language in his RFC assessment. R. 21. By including this language, the ALJ addressed the walking and standing limitations that Dr. Kurup recommended. Therefore, Plaintiff's claim that the ALJ did not include these specific limitations in the question to the vocational expert or the RFC assessment is not meritorious.

**IV.     Conclusion**

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion, **DENIES** Defendant's Motion, and **REMANDS** this matter to the Commissioner for further proceedings in accordance with this opinion.

July 7, 2016                                                        _____/s/_____
                                                                              Charles B. Day
                                                                              United States Magistrate Judge

CBD/yv/jg